# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5048 | **DATE** | April 2, 2004 |
| **CASE TITLE** | | *Reeves v. Federal Reserve Bank* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] As more fully set out in the attached memorandum and order, the following motions in limine are granted: 63-1, 64-1, 68-1, 69-1, 70-1, and 71-1. Nos. 66-1 and 72-1 are granted in part and denied in part. No. 60-1 is denied. Nos. 59-1, 65-1, 67-1, and 89-1 are taken under advisement. Nos. 61-1, 62-1, 78-1, and 85-1 are denied without prejudice. (Enter Memorandum and Order).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 06 2004 | 95 |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS/c | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

APR 0 6 2004

| | |
|---|---|
| **MORRIS R. REEVES,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   00 C 5048 |
| | ) |
| **FEDERAL RESERVE BANK OF** | ) |
| **CHICAGO,** | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This employment discrimination case is set for trial commencing on April 12, 2004. The

parties' motions in limine and the defendant's motion to strike and sanction the plaintiff are

before the court. The court will consider Reeves' untimely, 44-page response in the interests of

resolving the motions on their merits. The court cautions counsel, however, not to disregard

dates set by the court or the local rules governing page length again in the future.

### Discussion

Plaintiff Morris Reeves asserts that his former employer, the Federal Reserve Bank of

Chicago, discriminated against him based on his race in violation of Title VII, 42 U.S.C.

§ 2000e, and 42 U.S.C. § 1981. The court previously granted the Reserve Bank's motion for

partial summary judgment with respect to Reeves' constructive discharge and pattern and

practice claims. For the purposes of this order, the court will assume familiarity with that prior

order.

- Plaintiff's motion in limine regarding references to age discrimination — The
Reserve Bank does not object. This motion is granted.

- Plaintiff's motion in limine regarding Alicia Williams' and Nancy Goodman's
notes [59-1]   Alicia Williams was one of the individuals who originally interviewed and hired



Reeves. She supervised Reeves directly or indirectly during his tenure at the Reserve Bank. Nancy Goodman was Williams' supervisor and was killed in a car accident in 2000. Reeves seeks to exclude: (1) notes prepared by Williams; and (2) notes prepared by Goodman and statements made by her out of Reeves' presence.

The notes and other records prepared by Williams and Goodman that are the subject of Reeves' motion all relate to the fact that he did not receive a promotion. They were not placed in Reeves' personnel folder or given to him at the time they were written. Because of this, Reeves contends that they are inadmissible hearsay. If the notes are admissible (an issue which the court does not reach at this time) and the Reserve Bank can lay a proper foundation for the notes, however, the fact that Reeves did not see them prior to the inception of this lawsuit is wholly irrelevant. Moreover, the fact that Reeves did not see the notes at the time they were prepared goes to their weight, not their admissibility. Accordingly, Reeves' request to exclude Williams' and Goodman's notes is taken under advisement, to be ruled upon in the context of the testimony being offered or elicited.

With respect to Goodman, Reeves also claims that all evidence of her "conversations, statements, and acts" are inadmissible under the Illinois Dead Man's Act, 735 ILCS § 5/8-201. The Illinois Dead Man's Act does not apply, however, where federal law supplies the rule of decision. *Estate of Chlopek by Fahrforth v. Jarmusz*, 877 F. Supp. 1189, 1193 (N.D. Ill. 1995). Because only federal claims are at issue in this case, the Illinois Dead Man's Act is, therefore, inapplicable. This leaves the court with Reeves' contention that all of Goodman's statements are hearsay. Because he does not specifically delineate the testimony at issue or discuss why it is inadmissible, the court declines to exclude it wholesale at this point in the proceedings. The

2

motion to exclude evidence relating to Goodman under the Illinois Dead Man's Act is thus taken under advisement, to be ruled upon in the context of the testimony being offered or elicited.

- Defendant's motion in limine to exclude evidence relating to Nancy Goodman's alleged acts of discrimination [69-1] --- As noted above, Reeves reported to Williams, who reported to Goodman, who is deceased. Reeves claims that Goodman failed to properly supervise Williams. The Reserve Bank seeks to limit testimony about Goodman's alleged delicts to matters that were addressed in her deposition. Citing to *DiLegge v. Gleason*, 131 F.Supp. 2d 520, 525-26 (S.D.N.Y. 2001), the Reserve Bank argues that it would be improper to shift blame to Goodman by expanding her alleged wrongs beyond matters that were raised in her deposition, when she could defend herself.

In *DiLegge*, a white firefighter alleged that he failed to receive a promotion due to reverse discrimination and because the City retaliated against him because he had engaged in union activities. The Fire Commissioner, who was the decision maker for the City, suffered a debilitating stroke and thus could not testify at trial. At his deposition, the plaintiff testified that he thought that others had received promotions because they were white but that he did not have a specific factual basis for this belief. *Id.* at 525-26. He did not name the Fire Commissioner as a perpetrator of the alleged discrimination. The court found that this testimony was not enough to get to the jury. It also held that the plaintiff could not add claims against the Fire Commissioner at trial that he had not articulated at his deposition because it would unfairly prejudice the defendants, given that the Fire Commissioner was physically precluded from testifying. *Id.* at 526.

3

The same logic that the court employed in *DiLegge* is applicable in this case. Reeves had an opportunity to explore his theories as to why Goodman was responsible for the alleged discrimination at the Reserve Bank. Because of Goodman's untimely demise, Reeves is thus limited to the matters that he raised in discovery, and cannot expand his theory of liability as to Goodman now that she cannot defend herself.

The court also notes that Reeves' position regarding Goodman is based solely on self-interest. Reeves seeks to exclude evidence relating to Goodman because it is hearsay and seeks to exclude her notes because they were not shown to him when they were prepared. Yet, he also seeks leave to present certain unspecified evidence relating to Goodman. The court declines Reeves' invitation to resolve the motions in limine relating to Goodman by excluding evidence which does not support Reeves' claims and admitting evidence that helps him.

● Plaintiff's motion in limine to admit Gary Skoog's expert opinion based on regression analysis [60-1] · Gary Skoog prepared regression analyses in July of 2001 on bank wide personnel data. These statistical analyses found that African-American bank employees received fewer promotions and lower performance ratings than white employees.

The Reserve Bank opposes admission of Skogg's report or testimony, contending that: (1) the grant of partial summary judgment as to Reeves' pattern and practice claim means this evidence is irrelevant; (2) Reeves failed to properly disclose Skoogs as a testifying expert; and (3) Skogg's testimony is inadmissible under *Daubert v. Merrell Dow Pharmeceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. The court agrees that Reeves cannot use Skoog's regression analyses to resurrect his pattern and practice claims.

4

Reeves, however, also seeks to elicit Skoog's opinion to support his disparate impact claim. The court thus moves to the Reserve Bank's second argument. Skoogs prepared his analyses in the Summer of 2001 and Reeves disclosed Skoogs as an expert as to damages in January of 2002. Reeves' motion in limine, which was filed long after the close of expert discovery, indicates that he wishes Skoog to testify for purposes other than damages. The Reserve Bank objects, contending that it would be prejudiced by the expansion of Skoog's testimony at this late date.

The sanction of excluding expert testimony that was not properly disclosed is "automatic and mandatory" unless the party making the tardy disclosure can show that its actions were either justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). Reeves has not presented a reasonable explanation as to why he seeks to expand Skogg's testimony at this late date. Moreover, expanding Skoog's testimony would definitively prejudice the Reserve Bank since discovery has long since closed and trial is imminent. Thus, Skogg's regression evidence is excluded. The court will, therefore, not reach the Reserve Bank's *Daubert* argument.

● Defendant's motion in limine to exclude evidence relating to Alicia Williams' claim of discrimination [61-1] — Williams filed a charge of discrimination against the Reserve Bank alleging sex and race discrimination in 1993 and 1994. Williams' claims were based on an April, 1993, reorganization of the supervision and regulation department. The relevant decision-makers were then Vice President Dave Epstein and Senior Vice President Frank Dreyer.

The Reserve Bank contends that evidence relating to Williams' discrimination claims should be excluded because Reeves' pattern and practice claim is no longer pending and, in any

event, this evidence is irrelevant and prejudicial because a different department and different supervisors were at issue.

With respect to pattern and practice, the Reserve Bank observes that this court previously stated that, "it is unclear how anecdotal evidence relating to Williams could support a discrimination claim as to Reeves, and it is even more unclear what that anecdotal evidence might be." In other words, Reeves failed to develop facts relating to Williams at the summary judgment stage. He cannot get a second bite at the apple by pointing to Williams' discrimination claim to support a pattern and practice claim for the first time at this stage in the proceedings. Thus, he cannot use this evidence to show the "employment atmosphere" and as "back ground [sic] evidence." Reeves' Response at 12.

Reeves appears to also wish to introduce evidence relating to Williams' discrimination claim to demonstrate pretext. Reeves asserts that the fact that Williams personally filed a discrimination claim casts doubt on the Reserve Bank's proffered reason for not promoting him. According to Reeves, Williams knew that the Reserve Bank preferred white employees and thus chose to discriminate against African-American employees to get along and promote her own career. It is unclear how Williams' discrimination claim furthers this argument and whether the facts relating to Williams' discrimination claim are relevant to the issues to be determined at trial. The court will thus deny this motion in limine without prejudice to renewal at trial should evidence be presented warranting reconsideration.

• Defendant's motion in limine to exclude evidence relating to time periods outside the statute of limitations [62-1] --- Reeves filed his first discrimination charge with the EEOC on September 10, 1999. Conduct occurring 300 or fewer days before this date is actionable under

Title VII. *See* 42 U.S.C. § 2000e-5(e)(1). Three hundred days before September 10, 1999, is November 14, 1998. Thus, only conduct on or after November 14, 1008, is actionable under Title VII. In addition, Reeves filed his federal complaint, which includes a claim brought under 42 U.S.C. § 1981, on August 17, 2000. A two year limitations period applies to claims brought under § 1981. Two years before August 17, 2000, is August 17, 1998. Thus, only conduct on or after August 17, 1998, is actionable under § 1981.

Reeves claims that events occurring outside the limitations period are admissible because they provide necessary background for his claims. The parties have not delineated the purportedly time-barred evidence. The court will thus deny this motion in limine without prejudice to renewal at trial should evidence be presented warranting reconsideration.

- Defendant's motion in limine to exclude evidence relating to back pay after plaintiff's date of resignation [63-1] — As the Reserve Bank correctly notes, an employee who quits is not entitled to back pay. *See Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659-60 (7th Cir. 2001). In his opposition to the Reserve Bank's motion for summary judgment, Reeves contended that the totality of the circumstances surrounding his retaliation claim created an intolerable working environment. The court, however, found that Reeves was not constructively discharged. Thus, this motion is granted because evidence relating to any requests for back pay is irrelevant since it is not available.

- Defendant's motion in limine to exclude the expert report of Gary Skoog and to limit Skoog's testimony [64-1] — Skoog prepared an expert report regarding Reeves' alleged damages. Reeves seeks to present Skoogs as a witness at trial as well as introduce portions of

the report. The Reserve Bank contends that Skogg's testimony should be limited temporally and that Skoog should not be allowed to testify about fringe benefits.

The relevant time period for this evidence is August 17, 1998 (when the statute of limitations began to run on Reeves' § 1981 claims) and March of 2000 (when Reeves quit). Skogg's testimony is thus limited to this time period. With respect to Skoog's underlying report, Reeves concedes that the report is not admissible if he testifies live. This is correct.

This leaves the court with the Reserve Bank's argument that Skoogs' testimony regarding fringe benefits should be excluded. Skoggs compared the difference in salaries between Reeves and Mike Berry, a co-worker with a higher grade, assumed that fringe benefits are worth 17% of an employee's salary, and multiplied the salary differential by 17% to arrive at Reeves' alleged lost fringe benefits. A plaintiff can recover damages for lost fringe benefits only if he first shows that he incurred out of pocket expense to replace the fringe benefits. *See Sykes v. Target Stores,* , No. 00 C 5112, 2002 WL 554505 *5 (N.D. Ill. Apr. 15, 2002).

Reeves claims that he incurred out of pocket costs such as lost social security contributions, lost matching contributions to the Reserve Bank's thrift and retirement plans, and medical expenses paid to Dr. Lyons. Reeves' Response at 40. Reeves has not explained how the loss of medical benefits constitutes lost fringe benefits and it is far from self-evident how they could be fringe benefits, at least based on the briefs before the court. With respect to the lost contributions, the Reserve Bank notes that the figures supporting these amounts were based on information provided by Reeves and were not independently verified. Under Fed. R. Evid. 703, experts may not base opinions on facts supplied by an interested party. *See EEOC v. Rockwell International Corp.,* 60 F.Supp. 2d 791, 797 (N.D. Ill. 1999). Reeves thus seeks to

8

provide additional support for the figures he gave Dr. Lyons. However, this is too little, too late, as discovery is long closed. Thus, this motion is granted.

- Defendant's motion in limine to exclude evidence relating to Alicia Williams' alleged acts of discrimination against other employees [65-1] — In his deposition, Reeves identified five African-American individuals who allegedly told him that Williams (who is also African-American) had discriminated against them based on their race and that Williams had permitted sexual harassment to occur. These individuals worked in the supervision and regulation department, while Reeves worked in the consumer and community affairs department. The alleged discrimination and harassment occurred more than four years prior to the time period at issue in this case.

The Reserve Bank seeks to bar Reeves from testifying as to what other employees told him and to prevent the other employees from testifying as to their own experiences. If this testimony comes in at all, it will have to come in via testimony from the employees themselves to avoid a hearsay problem. According to the Reserve Bank, however, it should not come in at all because it is irrelevant to Reeves' claims of discrimination and is unfairly prejudicial. The court agrees that testimony about the sexual harassment rumors is irrelevant and prejudicial. This is true even though the alleged harassers were white males (the record does not specify the race of the alleged victims). The mere fact that an individual is white does not automatically create an inference of race-based prejudice against Reeves years later and in a different wholly context. In any event, the timing and surrounding circumstances of the alleged sexual harassment do not have any relation to the timing or substance of Reeves' claims of discrimination.

9

The Reserve Bank also contends that the five African-American employees' testimony is similarly irrelevant and prejudicial. In response, Reeves argues that their testimony shows Williams' state of mind at the time she purportedly discriminated against Reeves. The court begins by stressing that it has already rejected Reeves' pattern and practice claim so evidence relating to the five employees cannot be used to establish an atmosphere of pervasive discrimination at the Reserve Bank.

The parties, however, agree that the testimony may be probative if Reeves can establish that Williams discriminated against these employees and that the alleged discrimination was not only reasonably close in time to the alleged acts of discrimination directed at Reeves but also arose under similar circumstances. *See Stopka v. Alliance of American Insurers*, 141 F.3d 681, 687 (7th Cir. 1998). If, however, the evidence has only slight probative value, the court may exclude it to avoid a series of collateral "trial[s] within the trial" which would result in confusion and delay. *Id.*; Fed. R. Evid. 403.

Here, the other acts of alleged discrimination occurred over four years prior to the alleged discrimination against Reeves in a different department. Moreover, it appears that allowing this testimony would lead to a series of five mini-trials as to whether Williams in fact discriminated against these five individuals. Reeves has also not explained precisely how this evidence would shed any light on Williams' state of mind years later regarding Reeves. Finally, Reeves really seems to want to use the evidence to show that Williams discriminated against other African-American employees and thus must have also discriminated against Reeves.

This is a pattern and practice claim, and Reeves' pattern and practice claim was resolved on summary judgment. Thus, the five employees may not testify as to Williams' alleged

discrimination against them to establish that Williams had a pattern and practice of discriminating against African-American employees. To the extent that Reeves is attempting to introduce this evidence for another purpose, however, the motion in limine to exclude it is taken under advisement, to be ruled upon in the context of the testimony being offered or elicited.

●      Defendant's motion in limine to exclude plaintiff's speculation as to the reasons for Harry Ford's promotion [66-1] — Harry Ford, an African-American manager in the community and consumer affairs department who also reported to Williams, was promoted in 1999. Reeves believes that Ford was promoted and he was not because he had filed a charge of discrimination and Ford had not. At his deposition, Reeves testified that Williams promoted Ford to teach Reeves a lesson (*i.e.*, to retaliate against him for pursuing a formal discrimination claim) but did not point to any specific evidence supporting his opinion.

Reeves claims that this testimony is admissible as lay opinion testimony under Fed. R. Evid. 701. Under Rule 701, lay witnesses may testify as to opinions if they are: (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. "Lay opinion testimony most often takes the form of a summary of first-hand sensory observations." *U.S. v. Conn*, 297 F.3d 548, 553 (7th Cir. 2002). It thus allows a witness to offer opinions about matters that he perceived, such as "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." 297 F.3d at 554 n.2.

Critically, however, a witness' testimony is admissible under Rule 701 only if it reflects personal knowledge that is rationally based on his perception. *See* Fed. R. Evid. 701 and advisory committee notes. Here, Reeves' opinion as to why Williams promoted Ford, at least from a review of the motions papers, appears to be based on a gut instinct as opposed to any hard facts. A gut instinct is not a fact rationally based on perception. *See id.* Thus, Reeves may testify regarding the basis for Ford's promotion if Reeves' testimony is based on concrete facts within his personal knowledge. Reeves may not, however, offer unsupported speculation as to why Ford was promoted.

● Defendant's motion in limine to exclude evidence relating to tuition assistance programs and other training [67-1] — Reeves seeks to introduce evidence showing that the Reserve Bank denied Reeves tuition reimbursement for certain courses and his Masters of Jurisprudence. The court previously ruled that the Reserve Bank's denial of educational and training opportunities did not support Reeves' constructive discharge claim. The court reasoned that it did not create a materially adverse change in the terms and conditions of his employment since "a hypothetical future performance issue is not enough to state a claim for a materially adverse change in the terms and conditions of employment."

In his opposition to the Reserve Bank's motion in limine, Reeves contends that this court should revisit its ruling based on a recent Seventh Circuit decision. *See Durkin v. City of Chicago*, 341 F.3d 606,611 (7th Cir. 2003). In that case, the court found that a discriminatory denial of job-related training could potentially constitute an adverse employment action under Title VII. *Id.* To the extent that Reeves seeks reconsideration of the court's ruling as to his

constructive discharge claim, his motion is denied because it is procedurally improper and meritless.

To state a prima facie claim for failure to train, a plaintiff must establish: (1) that he was a member of a protected class; (2) that he was similarly situated to persons outside his protected class; (3) that he was treated differently than those persons; and (4) that any training the defendant failed to provide him was material to further promotion. *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998). "[T]he mere fact that Caucasian employees may have received more training than [plaintiff] falls short of raising an inference of discrimination . . . . [as a plaintiff] must come forward with specific evidence showing that [he] was similarly situated to Caucasian employees who received more training." *Id.* at 668.

In support of his constructive discharge claim, Reeves basically pointed to training received by other employees. He did not point to evidence showing that he was similarly situated, and cannot bolster his arguments at this point with additional facts and citations to the record. He also did not show that any of the training the Reserve Bank failed to provide was material to further promotion. This was the basis for the court's finding that the lack of training could at best lead to "a hypothetical future performance issue" and thus was not actionable.

Nevertheless, the court's ruling was limited to Reeves' constructive discharge claim because the parties disputed whether the lack of training and tuition reimbursement created an intolerable working environment that amounted to constructive discharge. Therefore, contrary to the Reserve Bank's arguments today, the court did not make a blanket finding that Reeves' lack of training and tuition reimbursement arguments could never support his Title VII and § 1981 claims.

Given the scattershot nature of Reeves' summary judgment filings, it may well be possible to adduce evidence at trial which shows that similarly situated white employees were afforded materially significant training or educational opportunities even if these opportunities did not rise to the level of constructive discharge. The court makes no findings as to such a possibility; it merely wishes to provide an example of how the demise of the constructive discharge claims does not necessarily mean that Reeves' failure to promote and tuition reimbursement arguments fail across the board. Thus, this motion in limine is taken under advisement. The court will consider it at trial, if necessary, in the context of the evidence presented. Reeves shall proffer his proposed evidence before eliciting testimony before the jury.

- Defendant's motion in limine to exclude testimony that a commission requirement was not a legitimate business decision [68-1] — Reeves was ineligible for the position of manager of consumer complaints because the Reserve Bank required applicants to be commissioned bank examiners. This position was graded the same as Reeves' position. The Reserve Bank seeks to exclude testimony indicating that a commission requirement for this position was not a legitimate business decision. Reeves opposes this motion, contending that a commission was not necessarily required to promote him to a higher grade. He notes that white employees without a commission were promoted to a higher grade and concludes that the commission requirement for promotion thus demonstrates that the commission requirement as applied to African-American employees is pretextual.

The Reserve Bank stresses that the commission requirement only applied to the position of manager of consumer complaints, which was graded the same as Reeves' position. The court has carefully reviewed the record, and it appears that the Reserve Bank is correct when it notes

14

that it never relied on the commission requirement for other positions at a higher grade. The court thus agrees with the Reserve Bank that it will confuse the jury if Reeves presents evidence to refute a position that the Reserve Bank has never taken (*i.e.*, that Reeves did not receive a promotion to a higher grade because he did not have a commission). Accordingly, this motion is granted.

● Defendant's motion in limine to exclude plaintiff's use of legal terminology and conclusions [70-1] — The Reserve Bank seeks to preclude Reeves from using terms such as "constructive discharge" and "constructive demotion." It contends that these terms have legal meanings and that Reeves is not qualified to draw legal conclusions. Reeves states that he does not oppose this motion but reserves his right to testify to support his constructive discharge and demotion claims without using "the specific legal terms." Thus, this motion in limine is granted, although the court notes that Reeves' testimony will, of course, be limited to claims which are actually pending before the jury.

● Defendant's motion in limine to exclude references to the *Daniels* litigation and other pattern-related evidence [71-1] — Reeves asserts that he was the victim of pattern and practice discrimination. In addition to Reeves' suit against the Reserve Bank, fourteen current and former African-American employees sued the Reserve Bank alleging race discrimination. This case is proceeding in front of Judge Hibbler under the caption *Daniels v. Federal Reserve Bank of Chicago*, No, 98 C 1186. The *Daniels* case was certified as a class action and then was subsequently decertified.

The Reserve Bank seeks to exclude evidence relating to the *Daniels* litigation, contending that it is only relevant to Reeves' now-defunct pattern and practice claims. Reeves

does not object to this motion generally insofar as it relates to his pattern and practice claims. He does, however, claim that the motion is overbroad because it seeks to prevent him from using the statistical evidence adduced in *Daniels* for impeachment purposes. He also contends that he can use evidence from *Daniels* for purposes other than trying to retry his pattern and practice claims. Specifically, he seeks to introduce "anecdotal evidence regarding other acts of discrimination." But what is "anecdotal evidence regarding other acts of discrimination" but another name for pattern and practice discrimination? The motion is granted insofar as it seeks to exclude pattern and practice evidence.

Reeves also seeks to have bank employees who were deposed in the *Daniels* case identify documents and testify as to general Bank policies. Because this does not relate to his pattern and practice claim, Reeves may call employees from the Reserve Bank to testify to these limited matters.

● Defendant's motion in limine to preclude or limit use of plaintiff's 57 pages of deposition errata sheets [72-1] — The Reserve Bank seeks to prevent Reeves from using his 57 sheets of deposition errata sheets, contending that they are untimely and amount to wholesale changes to his testimony. Alternatively, it seeks leave to use the errata sheets to cross-examine Reeves and to limit Reeves's use of the errata sheets to redirect.

Fed. R. Civ. P. Rule 30(e) allows "changes in form and substance to a deposition transcript" and thus "permits a party to change a deposition from what he or she said to what he or she meant, though the rule requires that the original transcript be retained so that the trier of fact can evaluate the honesty of the alteration." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). However, "a change of substance which actually contradicts the

16

transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Id.* Any errata sheets must be submitted to the court reporter withing thirty days following the delivery of the transcript. Fed. R. Civ. P. 30(e).

With respect to the timeliness of Reeves' errata sheets, the Reserve Bank contends that Reeves returned his errata sheets late (forty-nine days after his deposition). Reeves takes issue with the date on which the Reserve Bank contends he received the transcript. He asserts that there is no evidence which contradicts his claim that it took nineteen days for it to travel two blocks from 200 North LaSalle Street to 30 North LaSalle Street. Reeve's argument seems facially questionable, although there is at least a theoretical possibility that the transcript was lost in the mail and then recovered. Luckily, however, the court need not delve into the nuances of the United States Mail delivery schedule as the Reserve Bank was afforded an opportunity to redepose Reeves after he submitted the errata sheets. Thus, it was not prejudiced by the apparently untimely errata sheets. The court, therefore, will not exclude them.

This brings the court to Reeves' claim that the court reporter made numerous errors and omitted entire sections of Reeves' deposition testimony, as indicated by the use of en dashes in the transcript. According to the Reserve Bank, the court reporter took down Reeves' testimony accurately and inserted en dashes when Reeves paused to reflect the fact that Reeves testified in a disjointed manner. It is more appropriate for the jury, rather than the court, to make findings as to Reeves' credibility in making the numerous changes to his deposition. To avoid prejudicing either party, however, Reeves may only introduce the errata sheets on redirect. The Reserve Bank may then also refer to the errata sheets on recross.

17

- Defendant's motion in limine to exclude evidence relating to plaintiff's medical treatment after July 30, 2001 [78-1] — This motion is denied without prejudice consistent with paragraph five of the order submitted following the parties' pretrial conference.

- Defendant's motion to strike plaintiff's exhibits Q1-Q25 and to sanction plaintiff [85-1] — This motion is also denied without prejudice consistent with paragraph five of the order submitted following the parties' pretrial order. The defendant has also filed a renewed motion to strike plaintiff's exhibits Q1-Q25 [89-1]. This motion is taken under advisement. The court will address it at the scheduling conference on April 6, 2004.

### Conclusion

The court hopes that its ruling has clarified the scope of the upcoming trial. Unfortunately, certain briefs filed in this case have been far from crystal clear and have failed to marshall arguments in a consolidated and cogent form. To sum up, for the foregoing reasons, the court rules as follows on the parties' motions in limine:

(1)  Plaintiff's motion in limine regarding references to age discrimination is granted.

(2)  Plaintiff's motion in limine regarding Alicia Williams' and Nancy Goodman's notes [59-1] is taken under advisement, to be ruled upon in the context of the testimony being offered or elicited.

(3)  Defendant's motion in limine to exclude evidence relating to Nancy Goodman's alleged acts of discrimination [69-1] is granted to the extent that it seeks to exclude allegations of discrimination other than those raised in discovery.

(4)  Plaintiff's motion in limine to admit Gary Skoog's expert opinion based on regression analysis [60-1] is denied.

(5)  Defendant's motion in limine to exclude evidence relating to Alicia Williams' claim of discrimination [61-1] is denied without prejudice to renewal should evidence be presented at trial warranting reconsideration.

(6)    Defendant's motion in limine to exclude evidence relating to time periods outside the statute of limitations [62-1] is denied without prejudice to renewal should evidence be presented at trial warranting reconsideration.

(7)    Defendant's motion in limine to exclude evidence relating to back pay after plaintiff's date of resignation [63-1] is granted.

(8)    Defendant's motion in limine to exclude the expert report of Gary Skoog and to limit Skoog's testimony [64-1] is granted. Skogg may not testify regarding his fringe benefit analysis.

(9)    Defendant's motion in limine to exclude evidence relating to Alicia Williams' alleged acts of discrimination against other employees [65-1] is granted to the extent that the employees may not testify as to Williams' alleged discrimination against them to establish that Williams had a pattern and practice of discriminating against African-American employees. To the extent that Reeves is attempting to introduce this evidence for another purpose, however, the motion in limine is taken under advisement, to be ruled upon in the context of the testimony being offered or elicited.

(10)   Defendant's motion in limine to exclude plaintiff's speculation as to the reasons for Harry Ford's promotion [66-1] is granted in part and denied in part. To the extent that Reeves' opinion about Ford's promotion is based on actual facts, he may testify as to those facts. He may not, however, offer unsupported speculation as to the reasons for Ford's promotion.

(11)   Defendant's motion in limine to exclude evidence relating to tuition assistance programs and other training [67-1] is taken under advisement. The court will consider it at trial, if necessary, in the context of the evidence presented. Reeves shall proffer his proposed evidence before eliciting testimony before the jury.

(12)   Defendant's motion in limine to exclude testimony that a commission requirement was not a legitimate business decision [68-1] is granted to the extent that it seeks to exclude evidence that the Reserve Bank imposed a commission requirement on positions other than the position of manager of consumer complaints.

(13)   Defendant's motion in limine to exclude plaintiff's use of legal terminology and conclusions [70-1] is granted.

(14)   Defendant's motion in limine to exclude references to the *Daniels* litigation and other pattern-related evidence [71-1] is granted insofar as it seeks to exclude pattern and practice evidence. Reeves may call employees from the Reserve Bank case to identify documents and testify as to general Bank policies to the extent that this is not an effort to resurrect his pattern and practice claim.

(15)    Defendant's motion in limine to preclude or limit use of plaintiff's 57 pages of deposition
        errata sheets [72-1] is granted in part and denied in part. The errata sheets may be
        presented to the jury. However, Reeves may only introduce the errata sheets on redirect.
        The Reserve Bank may then also refer to the errata sheets on recross.

(16)    Defendant's motion in limine to exclude evidence relating to plaintiff's medical
        treatment after July 30, 2001 [78-1] is denied without prejudice consistent with paragraph
        five of the order entered following the parties' pretrial conference.

(17)    Defendant's motion to strike plaintiff's exhibits Q1-Q25 and to sanction plaintiff [85-1]
        is denied without prejudice consistent with paragraph five of the order entered following
        the parties' pretrial conference.

(18)    Defendant's renewed motion to strike plaintiff's exhibits Q1-Q25 [89-1] is taken under
        advisement. The court will address it at the scheduling conference on April 6, 2004.


DATE:   APR 0 2 2004                    _Blanche M. Manning_
                                        Blanche M. Manning
                                        U.S. District Court Judge


00rev2048.mil

20